## NEALE *v*. SMITH.

### Opinion delivered January 18, 1896.

JURISDICTION—CIRCUIT COURT—An allegation in a complaint that plaintiff was damaged in a sum within the jurisdiction of the circuit court is *prima facie* sufficient to give that court jurisdiction, in the absence of any special plea of want of jurisdiction, or of any charge in the answer that the allegation of the amount of damage was not made in good faith.

DAMAGES—SCHOLARSHIP CONTRACT.—The measure of damages for failure to give the entire course of instruction called for by a scholarship contract, in the absence of any special damage, is the difference between the amount paid for the instruction received and that for which it was offered to give the whole course.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

#### STATEMENT BY THE COURT.

The appellee alleged that for thirty-five dollars he procured from appellant a "scholarship" in the book-keeping department of the Fort Smith Commercial College, with the express understanding that appellee could not attend said college longer than the term of three months from the 6th day of October, 1891, and that he should have the privilege, after the expiration of that time, of returning to said college at any future time

and completing the course of bookkeeping without any additional expense; that on the —— day of February, 1893, appellee did return to said college for the purpose of completing said course, and informed appellant of that fact, who refused to allow appellee to enter the school, unless appellee would take the additional course of shorthand, or pay an additional sum. Appellee alleges that this refusal was a breach of contract on the part of appellant, to appellee's damage in the sum of two hundred dollars. The complaint was filed in the Sebastian circuit court. The answer denied each allegation of the complaint, and set up that appellee entered the college on or about the 17th day of September, 1891, with the understanding that he was to have the privilege of attending the college until the end of that term, to-wit, until the 24th day of December, 1891. And that, in consideration of tuition covering said period, and books and stationery for his use, he paid the appellant thirty-five dollars; that appellee entered said college with the express agreement that he was not to attend longer than that term, and with no understanding that he should have the right to return and finish this bookkeeping course at any time thereafter. The appellant further says that appellee entered the college on the 17th day of September, 1891, and pursued his studies until the 24th of December, 1891, and that appellant furnished the necessary books and stationery for the use of appellee, as per contract with him.

On behalf of appellee, the evidence tended to show that the regular price for a scholarship in bookkeeping in the Fort Smith Commercial College was forty dollars for the course; that appellee was offered the term (whatever that may mean) for thirty-five dollars, including books and stationery, etc.; that he paid the thirty-five dollars, and received a receipt which read as follows: "Received of A. F. Smith thirty-five dollars

for tuition and necessary books and stationery to the
bookkeeping department. (Signed) G. M. Neale." That
appellee thought, when he paid the thirty-five dollars,
that he was getting the scholarship, though he did
not know that anything was said about the scholar-
ship. A paragraph from the catalogue of the college
for 1890-91 was read in evidence as follows: "*Book-
keeping Department. A complete business course, em-
bracing spelling, grammar, arithmetic, business writing
correspondence, commercial paper, commercial calcula-
tion, mercantile law, business ethics, commission, bank-
ing, double and single entry bookkeeping. Terms, pay-
able on entering, giving the student the privilege of at-
tending until he completes the course, $40.00. Books
and stationery necessary to complete the course, $10.00.
\* \* \* \* \* \* \* Should a pupil not'finish the
course in the average time of sixteen weeks, his only ad-
ditional expense would be $3.00 per week board.*" And
on behalf of the appellant the evidence tended to show
that the appellee paid appellant twenty-five dollars
for being taught bookkeeping by appellant from Sep-
tember 17th until December 25, 1891, and that ap-
pellee paid appellant ten dollars for books and station-
ery; that appellee completed the course in book-keep-
ing, except banking, and left just before Christmas,
1891, stating that he had learned all of the course he
desired, and that he could not return to finish; that in
the spring of 1893 he returned, and asked to be permit-
ted to finish the course without paying more money.
The sum of fifteen dollars was demanded as an addi-
tional charge for completing the course, which appellee
refused to give, and went away, and brought this suit.
It was shown that forty dollars was the usual price
for the scholarship, exclusive of stationery, books, etc.;
that appellee was not sold a scholarship, but was given
reduced rates, because he was a teacher. It was shown

that a scholarship did not permit any student to go away and return at will. This privilege was granted for sufficient reasons, as a matter of grace, in some cases, but in this case appellant testified it was not asked, and that there was no agreement between himself and appellee that the latter might return and complete his course.

The appellant asked the court to instruct the jury that the amount in controversy was below the jurisdiction of the court, which was refused; and also asked that the jury be instructed that appellee had not made a case, and to return a verdict for defendant, which was refused,—to which proper exceptions were saved. The court of its own motion gave four instructions, and the last was as follows: "If plaintiff recovers, his measure of damages is the $35.00 paid for the scholarship."

*John H. Rogers*, for appellant.

1. This suit is in the nature of a common law action of assumpsit, and seeks to recover damages for a breach of a verbal contract. 42 Ark. 214; 55 *id.* 547. The court had no jurisdiction, the damages recoverable being under no circumstances more than $35.00. Const. Art. 7, sec. 40; 2 Ark, 170; *Ib.* 450; 5 *id.* 197; 45 *id.* 515; 3 *id.* 494; 33 *id.* 31; 12 Am. & E. Enc. Law, p. 301, note 2; 1 Elliott, Gen. Pr. sec. 2631, note 3. Jurisdiction can be raised by motion or instructions at any time, or by the court on its own motion. 1 Ark. 252; *Ib.* 275; 3 *id.* 495; *Ib.* 37; 18 *id.* 249; 35 *id.* 287; 12 Am. & E. Enc. Law, p. 306, note 5, and p. 307, note 1.

2. The amount alleged as damages is not the test of jurisdiction, but the real sum recoverable is. 1 Ark. 252; *Ib.* 275; 3 *id.* 494; 9 *id.* 466; 1 Sedg. Dam. (8 ed.) par. 370; 24 S. W. 1124; 10 Ark. 328; 25 *id.* 570; 63 Miss. 121; 7 Ark. 76; 12 Am. & E. Enc. Law, p. 309, note 1.

3. Plaintiff failed to make out a case, and the court should have given the second prayer asked by defendant. The allegation of the complaint, which is the *gist* of the action, is utterly without evidence to support it. 57 Ark. 402–461; 59 *id*. 66.

4. The finding of the jury is squarely against the first paragraph of instruction number three given by the court.

Jurisdiction
of circuit
court.

WOOD, J., (after stating the facts). The first question is, did the court have jurisdiction, and was the question of jurisdiction properly raised? The majority of the court is of the opinion that the allegation in the complaint that the appellee was damaged by the alleged breach of contract in the sum of two hundred dollars was a *prima facie* showing of jurisdiction, and that, in the absence of any special plea to the want of jurisdiction, or any charge in the answer that said allegation of the complaint was illusive, and made merely for the purpose of giving jurisdiction in fraud of the constitutional jurisdiction, the court was correct in not dismissing the cause for the want of jurisdiction. *Heilman* v. *Martin*, 2 Ark. 158; *Dillard* v. *Noël*, *id*. 449; *Watkins* v. *Brown*, 5 *id*. 197. I do not, however, concur in this view, under the allegations of the complaint. See authorities in note.

Measure of
damages for
breach of con-
tract.

2. The court erred in instructing the jury that appellee's measure of damages in case of recovery was thirty-five dollars. Even if the proof sustained the finding of the jury that the contract was for a scholarship which embraced the whole course in bookkeeping, and even if it justified the finding that a scholarship gave to its owner the privilege of returning, *ad libitum*

---

2 Am. & E. Enc. Law, p. 309, note 1; *Berry* v. *Linton*, 1 Ark. 252; *Fisher* v. *Hall*, *id*. 275; *Wilson* v. *Mason*, 3 *id*. 494; *Crabtree* v. *Moore*, 7 *id*. 74; *Collins* v. *Woodruff*, 9 *id*. 466.

*et in invitum*, to finish the course, still the contract, in that view, had been already partly performed by the appellant, in furnishing to appellee instruction in the whole course of bookkeeping except banking, and in furnishing him books and stationery. The appellee had already received the larger part of what his contract called for. Then, what was the proper measure of its breach? Clearly, the difference between what he had paid and what he would have had to pay to have the contract fulfilled as he understood it, *i. e.*, the difference between thirty-five and fifty dollars. According to the undisputed proof, when appellee returned to the college in the spring of 1893, and asked to be permitted to finish the course, by paying fifteen dollars he could have received all that he asked for, and all that he says he thought he was getting under the contract. This is his measure of damages, if he is damaged at all; for, while he alleged damages in the sum of two hundred dollars, there was no proof to show any special damages, and none were asked on the trial. But there is nothing in this record to show that appellee was damaged at all. We have been unable to discover the proof that the contract was really made as the appellee says he "thought" it was. Contracts cannot be established by suppositions. The appellee does not sustain the allegation of his complaint that, at the time the contract was made, "there was an express agreement that he should have the privilege of re-entering said college at any time after the expiration of three months, and completing the course of bookkeeping without additional expense." On the contrary, he shows that he and appellant had no conversation about the scholarship, and the positive proof on behalf of appellant is that he never sold appellee a scholarship, and never had an agreement with him "that he might return and complete this course at any time." It was in evi-

dence that the appellant said "his regular price for scholarship in bookkeeping was forty dollars for the course, but he offered the term for thirty-five dollars, including books and stationery." If it could be inferred from this that appellee purchased a scholarship, or that "term" and "scholarship," as used here, meant the same thing, still, there is no proof that a scholarship or term conferred upon its holder the right to come and go at will. On the contrary, it appears that the "average time" for a bookkeeping course was sixteen weeks, and the positive proof of the appellant was that "a scholarship did not permit any student to go away and return at his will." There was evidence that "the life scholarship" gave the privilege of attending "until he mastered his chosen department," but not that he could come and go just as it suited him. It conferred upon the owner "the privilege of returning and reviewing at any time," but not to complete an unfinished course at any time. The appellee sues for a breach of contract. His proof should not have come short of showing every essential element to constitute the breach. It should have shown both the terms of the contract and the manner of its breach. The burden was upon him on all these points, and he failed to meet it with evidence which is legally sufficient.

The cause is reversed, and remanded for a new trial.